IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ZEKIA WARREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-935-SMD |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff Zekia Warren appeals an administrative decision of Defendant Commissioner of Social Security ("Commissioner"). *Compl.* (Doc. 1) p. 1, ¶¶ 1–2. The decision denied Warren's application for supplemental security income disability benefits. *Id.* at ¶ 1. Warren argues that the Commissioner's decision is not supported by substantial evidence. *Id.* at ¶ 7. For the following reasons, the Court AFFIRMS the Commissioner's decision.

**I.   BACKGROUND**

Plaintiff Zekia Warren was born on August 28, 1997. *Admin. Ct. Tr.* p. 25.[1] Warren, who graduated high school in 2016, has completed some college courses online, but has never held a job. *Id.* at 37–39, 241. She allegedly became disabled on July 13, 2016, at

---

[1] "*Admin. Ct. Tr.*" consists of a consecutively paginated record of the administrative proceedings below; the consecutive pagination spans from ECF Doc. 17-2 to ECF Doc. 17-9. For clarity, the Court cites only to the consecutive pagination in lieu of the ECF pagination.

which time she applied for supplemental security income disability benefits. *Id.* at 17. She complained of cardio arrythmia, sleep apnea, keloids, and allergies. *Id.* at 72, 74.

Following the initial denial of her application, Warren received a hearing before an Administrative Law Judge ("ALJ") in May 2018. *Id.* at 44. She received a supplemental hearing before the same ALJ in October 2018. *Id.* at 33. Following the hearings, the ALJ found that Warren is not disabled under the Social Security Act, and the Appeals Council denied Warren's request for review. *Id.* at 1, 25. At that time, the ALJ's decision became the final decision of the Commissioner. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

## II.   WARREN'S MEDICAL HISTORY

A brief review of Warren's medical history is necessary to analyze the merits of her appeal. Between 2014 and 2018, Warren sought examination and treatment from numerous medical professionals, including dermatologists, pulmonologists, and cardiologists. *Pl.'s Br.* (Doc. 13) pp. 2–6. These professionals collectively diagnosed Warren with at least twenty-seven conditions. *Id.* Dermatologists and allergy specialists diagnosed Warren in part with contact dermatitis, keloids, eczema, and atopic dermatitis. *Id.* at 2, 5. Pulmonologists diagnosed her with sleep apnea, snoring, insomnia, hypertension, obesity, and hypersomnia. *Id.* at 4, 6. Cardiologists diagnosed her with cardiac arrhythmia, borderline left ventricular dysfunction, frequent premature ventricular contractions, palpitations, idioventricular rhythms, and vasovagal syncope, among other conditions. *Id.* at 2–6. Various institutions also diagnosed Warren with blepharitis of the upper and lower eyelids, viral gastroenteritis, and rhinitis. *Id.*

On May 29, 2018, Dr. Ben Craven, Warren's treating cardiologist, examined Warren and found that, although "she has fatigue on exertion and a marked limitation on physical activity, [s]he could sit and stand without limitation and can lift 10 pounds occasionally, and 5 pounds frequently." *Admin Ct. Tr.* at 23. Two days later, Sam Banner, a Consultative Examiner, examined Warren. *Id.* at 22. His tests revealed normal results, except that Warren's pulse momentarily went from 61 to 134, and she became lightheaded. *Id.* Dr. Banner opined that Warren "could never climb stairs, ramps, ladders, scaffolds, balance, stoop, kneel, crouch or crawl" or "work at unprotected heights, around moving, mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, heat or vibration." *Id.* at 22–23.

### III.     THE ALJ'S EVALUATION OF WARREN'S CLAIM

In the administrative proceedings below, the ALJ affirmed the denial of Warren's application for supplemental security income disability benefits. *Admin. Ct. Tr.* at 25. The Social Security Act specifies the criteria for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). The Act requires an ALJ to follow a five-step process when evaluating whether a claimant is eligible for Social Security benefits:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart. P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 416.920(a). A claimant bears the burden of proof through step four; the Commissioner bears the burden of proof at step five. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). In this case, the ALJ concluded that Warren is not disabled at step five. *Admin. Ct. Tr.* at 25. The Court will summarize the ALJ's findings at each step.

### A. Step One

The ALJ began by considering Warren's work activity. *Id.* at 19. A claimant is not disabled as that term is used in the Social Security Act if he or she is engaged in "substantial gainful activity." 20 C.F.R. §416.920(a)(4)(i). If an ALJ finds that a claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two of the statutory framework. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). Here, the ALJ found that Warren has not engaged in substantial gainful activity since she allegedly became disabled. *Admin. Ct. Tr.* at 19. Accordingly, the ALJ continued to step two. *Id.*

### B. Step Two

The ALJ next considered whether Warren has a severe impairment. *Admin. Ct. Tr.* at 19. A severe impairment is an impairment or combination of impairments that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). A claimant is not disabled if he or she lacks a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). An ALJ proceeds to step three upon finding that a claimant has a severe impairment. *McDaniel*, 800 F.2d at 1030. Here, the ALJ found that Warren has the following severe impairments: "obesity, sleep apnea, hypertension, cardiac arrhythmia, vasovagal syncope, and eczema." *Admin. Ct. Tr.* at 19. The ALJ therefore proceeded to step three. *Id.* at 20.

### C. Step Three

The ALJ next determined whether one or more of Warren's impairments meets or equals a statutorily enumerated impairment. *Id.* A claimant is disabled if he or she has an impairment that meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart. P, Appendix 1. 20 C.F.R. §416.920(a)(4)(iii). Otherwise, an ALJ proceeds to step four. *McDaniel*, 800 F.2d at 1030. Here, the ALJ found that Warren's impairments are not listed in 20 C.F.R Part 404. *Admin. Ct. Tr.* at 20. Accordingly, the ALJ moved to step four. *Id.* at 21.

### D. Step Four

The ALJ next assessed Warren's "residual functional capacity" ("RFC") in order to determine whether she could perform her past relevant work. *Id.* at 21. A claimant's RFC is defined as that which the claimant "is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F. 3d 1232, 1238 (11th Cir. 2004). An ALJ determines a claimant's RFC "'based on all the relevant medical and other evidence' in the case." *Id.* (quoting 20 C.F.R. § 404.1520(e)). An ALJ then uses a claimant's RFC to determine whether the claimant is able to perform his or her former occupation. *Id.* A claimant who is able to perform his or her "past relevant work" is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If an ALJ finds that a claimant is not able to perform his or her former occupation, the ALJ proceeds to the fifth and final step. *McDaniel*, 800 F.2d at 1030.

Here, the ALJ found that Warren has an RFC to perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a).[2] *Admin. Ct. Tr.* at 21. The ALJ concluded, however, that Warren had no past relevant work to which she could return. *Id.* at 24. Accordingly, the ALJ proceeded to the fifth and final step. *Id.* at 25.

### E. Step Five

At the fifth step, the ALJ determined whether Warren could make an adjustment to other work in the national economy. *Id.* at 25. A claimant who can adjust to other work is not disabled, whereas a claimant who cannot adjust is disabled. 20 C.F.R. § 416.920(a)(4)(v). To make this determination, an ALJ considers the claimant's RFC, age, education, and work experience. *Id.*

An ALJ may use either the Medical-Vocational Guidelines ("grids") or the testimony of a vocational expert when determining whether a claimant can adjust to other work. *Phillips*, 357 F.3d at 1239. The grids "provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments." *Id.* at 1240. A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Id.*

Here, the ALJ considered Warren's RFC, age, education, and work experience in conjunction with the grids to find that Warren is not disabled under the Social Security Act.

---

[2] Sedentary work, as defined in 20 C.F.R. § 416.967(a), "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." A job is "sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

6

*Admin. Ct. Tr.* at 25. Although a vocational expert was present at each of Warren's administrative hearings, the ALJ did not call on either to testify. *Id.* at 34, 46.

## IV. DISCUSSION

The Commissioner's decision below is supported by substantial evidence. A federal court must uphold a decision of the Commissioner if it is "supported by 'substantial evidence'" and "there exists no other 'good cause' to remand." *McDaniel*, 800 F.2d at 1029. Substantial evidence is more than a scintilla, but less than a preponderance; it is that which a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). A reviewing court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). A court cannot decide the facts anew, make credibility determinations, or re-weigh evidence. *Moore*, 405 F.3d at 1211.

In this case, Warren argues that the Commissioner's decision is not supported by substantial evidence. *Compl.* (Doc. 1) p. 1, ¶ 7. Warren makes three arguments in support of her position. *Pl.'s Br.* (Doc. 13) pp. 7, 8, 10.[3] First, Warren contends that the ALJ erred

---

[3] Warren also attempts to argue that the ALJ erred by failing to limit her RFC in light of her nickel and peanut allergies and by failing to clarify an ambiguous statement by the doctor at UAB. *Pl.'s Br.* (Doc. 13) pp. 9–10. The Eleventh Circuit has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Additionally, a reviewing court will not consider issues raised for the first time in a reply brief. *Id.* at 683. Here, Warren has only made a passing reference to these arguments in her initial brief. Accordingly, she has abandoned them. The Court therefore does not consider these arguments.

7

by relying exclusively on the grids at step five to find that she was not disabled. *Id.* at 7. Second, Warren alleges that the ALJ's finding of her RFC is not supported by substantial evidence. *Id.* at 8. Third, Warren avers that the ALJ erred by failing to recontact Dr. Craven to clarify his testimony. *Id.* at 10. The Court addresses each argument in turn.

### A.     The ALJ did not err by relying exclusively on the grids at step five.

The ALJ did not err by relying exclusively on the grids to determine that Warren is not disabled. The Eleventh Circuit has made clear that sole reliance on the grids at step five is inappropriate in two scenarios: "*either* when [a] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). Here, Warren argues that her case falls within the second category. *Pl.'s Br.* (Doc. 13) p. 7.

The Eleventh Circuit has defined the phrase "significantly limit basic work skills" to mean "limitations that prohibit a claimant from performing 'a wide range' of work at a given work level." *Phillips*, 357 F.3d at 1243 (emphasis omitted) (citing *Foote*, 67 F.3d at 1559). This means that, for purposes of "developing a full and fair record regarding the vocational opportunities available to a claimant," an "ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote*, 67 F.3d at 1559 (internal quotation omitted). Non-exertional limitations "affect only [a claimant's] ability to meet the demands of jobs other than the strength demands," and

include limitations due to mental impairments, pain, difficulty seeing and hearing, and those that are manipulative or postural in nature. 20 C.F.R. § 416.969a(c).

Here, the ALJ made a specific finding in support of his conclusion that Warren could perform the full range of sedentary work. The claimant has not convinced the Court that each of the six severe impairments found by the ALJ at step two are non-exertional in nature. Still, even if all six are, the ALJ's decision demonstrates that he considered each in determining that "[t]here is no evidence to indicate [Warren] had any restrictions or limitations with regard to performing activities at the sedentary level." *Admin. Ct. Tr.* at 21–22. This satisfies the requirement stated in *Foote*. Because the ALJ found that Warren's limitations were not severe enough to preclude a wide range of work at the sedentary level, the ALJ did not err and was permitted to rely exclusively on the grids at step five of the analysis.

Warren's arguments to the contrary are misplaced. Warren reads the Eleventh Circuit's prohibition against exclusive reliance upon the grids at step five when "a claimant has non-exertional impairments that significantly limit basic work skills," *Phillips*, 367 F.3d at 1242, together with step two's definition of "severe impairment" as that which "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Warren recognizes the similar language in both and concludes that any finding of a severe non-exertional impairment at step two necessarily precludes exclusive use of the grids at step five.

Warren misunderstands the purpose and requirements of step two. Step two serves to filter out "claims based on the most trivial impairments . . . ." *McDaniel*, 800 F.2d

9

at 1031. The mere existence of impairments found at step two "does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. The "only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability." *Tuggerson–Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). It does not necessarily follow, then, that the presence of a severe non-exertional impairment—i.e., one that limits a claimant's ability to do basic work activities—mandates a finding that the impairment precludes a wide range of employment at the given work capacity level indicated by the exertional limitations, which in Warren's case is the sedentary level. For these reasons, the ALJ did not err by relying exclusively on the grids to determine that Warren is not disabled.

**B.  The ALJ's RFC determination is supported by substantial evidence.**

The ALJ's determination of Warren's RFC is supported by substantial evidence. Warren argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed "to consider the non-exertional implications of syncope on the RFC . . . ." *Pl.'s Br.* (Doc. 13) p. 9. Specifically, she cites Dr. Sam Banner's (a Consultative Examiner) opinion for the assertion that the ALJ should have found that she could not work around unprotected heights or moving machinery because of her syncope. *Id.* Additionally, Warren argues that a reasonable person would find that a claimant with syncope would be precluded "from working around unprotected heights or dangerous moving machinery." *Pl.'s Reply Br.* (Doc. 20) p. 4.

10

In determining whether a claimant is disabled, an ALJ must consider the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Here, the ALJ fully reviewed the evidence and determined Warren's RFC after considering the opinions of Drs. Banner and Craven, the objective medical evidence, and Warren's daily activities. The ALJ found Dr. Banner's opinion regarding the effects of her syncope to be inconsistent with Dr. Banner's "own benign findings in the consultative examination assessment." *Admin. Ct. Tr.* at 24. Dr. Banner placed extreme limitations on Warren's ability to work after noting the examination was normal except for a moment of lightheadedness. *Id.* at 24, 728–31.

Furthermore, the ALJ found that the testimony of Dr. Craven (Warren's treating cardiologist), the findings from Headland Family Medicine, and Warren's own daily activities undermine Dr. Banner's opinion. Dr. Craven opined that Warren could sit and stand without limitation. *Id.* at 23, 744. The ALJ also relied on the fact that the records from Headland Family Medicine "do not document an impairment so severe that it would prevent the claimant from engaging in all work activity." *Id.* at 23. Indeed, the clinic diagnosed her with vasovagal syncope, yet noted that "[n]o activity restrictions or limitations are required." *Id.* at 353. Finally, the ALJ noted that Warren's daily activities—her ability to care for herself, take online course, and shop online—support her RFC determination. *Id.* at 24, 50–51, 54, 56.

Accordingly, the Court finds that the ALJ considered Warren's medical condition as a whole in determining her RFC. Thus, the ALJ's determination of Warren's RFC is supported by substantial evidence.

### C. The ALJ did not err by failing to clarify Dr. Craven's testimony.

The ALJ did not err by failing to clarify Dr. Craven's testimony. In determining whether an ALJ's decision is supported by substantial evidence, a reviewing court gives "great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Substantial evidence is that which a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 121. If the evidence is inconsistent or insufficient to determine whether a claimant is disabled, an ALJ *may* attempt to resolve the inconsistency or insufficiency by recontacting the claimant's medical source. 20 C.F.R. § 416.920b(b)(2)(i) (emphasis added).

Here, the evidence before the ALJ is neither inconsistent nor insufficient to determine whether Warren is disabled. Dr. Craven filled out a medical form provided by Warren and submitted it to the Office of Disability Adjudication and Review. *Admin. Ct. Tr.* at 743–44. After checking a box for "Marked limitation of physical activity . . . even though the individual is comfortable at rest," Dr. Craven made the following pertinent selections:

In my medical opinion this patient has the following limitations and abilities:

Standing at one time:    [None]  15 minutes   30 minutes   60 minutes   2 hours   4 hours

Sitting at one time:     [None]  15 minutes   30 minutes   60 minutes   2 hours   4 hours

Hours patient can work per day: None   1 hour   2 hours   4 hours   6 hours   [8 hours]

Lifting on an **occasional basis**:   None   5 lbs.   [10 lbs.]   20 lbs.   50 lbs./more

Lifting on a **frequent** basis:      None   [5 lbs.]   10 lbs.   20 lbs.   50 lbs./more

*Admin. Ct. Tr.* at 744. Warren argues that because the chart is introduced as applying to her limitations *and* abilities, Dr. Craven's answers of "None" for "Standing at one time" and "Sitting at one time" means that she has no ability to stand or sit. *Pl.'s Br.* (Doc. 13) p. 10.

By contrast, the ALJ interpreted Dr. Craven's answers to state that Warren could sit or stand without limitation. *Admin Ct. Tr.* at 23. The Court finds that the ALJ's interpretation is reasonable. The third selection—that Warren could work 8 hours per day—would be inconsistent with an opinion that Warren has no ability to stand or sit. Furthermore, Warren would be unable to lift 10 pounds occasionally or 5 pounds frequently if she were unable to stand or sit. Finally, and contrary to Warren's assertion, the ALJ's interpretation is consistent with Dr. Craven's selection that Warren has "[m]arked limitation of physical activity . . . even though [she] is comfortable at rest" because one can be at rest while standing or sitting. Accordingly, because the evidence before the ALJ was both sufficient and consistent, the ALJ did not err by failing to clarify Dr. Craven's testimony.

## V. CONCLUSION

Plaintiff Zekia Warren has failed to show that the Commissioner's decision is not supported by substantial evidence. First, the ALJ did not err by relying exclusively on the grids to determine that Warren is not disabled. Second, the ALJ's determination of Warren's RFC is supported by substantial evidence. Third, the ALJ did not err by choosing not to re-contact Dr. Craven. The Court therefore AFFIRMS the Commissioner's decision. The Court will enter a final judgment by separate order.

DONE this 5th day of March, 2021.

_/s/ Stephen M. Doyle_
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE